1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   STEVEN M. S.,

11                        Plaintiff,            CASE NO. 3:22-CV-5460-DWC

12          v.                                  ORDER AFFIRMING DEFENDANT'S
                                                DENIAL OF BENEFITS
13   COMMISSIONER OF SOCIAL
     SECURITY,
14
                        Defendant.
15

16          Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial

17   of his applications for disability insurance benefits (DIB) and social security insurance (SSI)

18   benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties

19   have consented to proceed before United States Magistrate Judge Christel. After considering

20   the record, the Court finds no reversable error and affirms the Commissioner's decision to

21   deny benefits.

22                                    **I. BACKGROUND**

23          Plaintiff filed for DIB and SSI in March 2009 alleging he became disabled October 24,

24   2008 and remained so through October 1, 2013. Administrative Record (AR) 12, 289-302, 1235-

1236. His applications were denied initially and on reconsideration, and again following a hearing before an Administrative Law Judge (ALJ). AR 89-135, 147-167. Plaintiff requested review, and the Appeals Counsel remanded his case for a new hearing. AR 168-171. On March 6, 2012 a video hearing was held before a different ALJ who denied Plaintiff's claim. AR 9-88. The Appeals Council denied Plaintiff's request for review, after which Plaintiff appealed to the United States District Court for the Western District of Washington (this Court). AR 1-5.

On December 8, 2014 this Court entered an order affirming the ALJ's decision. *Smith v. Berryhill*, No. 3:13-cv-06082-JRC (W.D. Wash. Dec. 8, 2014). Plaintiff appealed to the Ninth Circuit, which issued a memorandum decision remanding his case for a new hearing. AR 898-905.

On May 2, 2018 and June 4, 2019 two additional hearings were held before an ALJ, after which the ALJ determined that Plaintiff was not disabled. AR 767-795. Plaintiff again appealed to this Court, which remanded his case for a new hearing. AR 1324-1345.

On January 25, 2022 a new hearing was held before an ALJ who determined on February 24, 2022 that Plaintiff was not disabled. AR 1232-1258,1259-1293. Plaintiff then filed the instant appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

1  harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2  2008).

3      Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of*

4  *Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as

5  "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and

6  means only—such relevant evidence as a reasonable mind might accept as adequate to support a

7  conclusion." *Id.* (internal quotations omitted).

8                    **III. THE ALJ'S FINDINGS**

9      The ALJ found Plaintiff has the severe impairments of: status post right shoulder surgery;

10  degenerative disc disease, cervical spine; bilateral hearing loss; major depressive disorder;

11  generalized anxiety disorder; and, bipolar disorder. AR 1238-1239; 20 CFR §§ 416.1520(c),

12  416.920(c).

13      The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light

14  work, limited by the ability to:

15          occasionally climb ladders, ropes, and scaffolds; occasionally crawl; and
            occasionally reach overhead with his right, dominant arm. He could tolerate
16          occasional vibration, extreme cold, and loud noise. He could have understood,
            remembered, and applied short, simple instructions and performed routine,
17          predictable tasks outside a fast-paced, production-type environment. He could have
            made simple decisions and tolerated occasional, routine workplace changes. He
18          could have had occasional interaction w/co-workers and supervisors but no
            interaction with the public
19
    AR 1241.
20
21      At step five of the sequential evaluation the ALJ concluded that a person of Plaintiff's

22  age, with his education, work experience, and RFC, remained capable of performing jobs that

23  exist in significant numbers in the national economy such as Basket Filler, Egg Sorter, and

24  Garment Sorter. AR 1248-1250; 20 CFR § 404.969.

# IV. DISCUSSION

Plaintiff argues the ALJ committed legal error by improperly discrediting his self-reported limitations as well as several medical opinions in his record, leading to an erroneous finding at step three of the sequential evaluation that he did not meet listed impairment 12.04C, as well as a flawed RFC assessment and ultimately a legally deficient non-disability determination. *See generally*, Dkt. 15. Plaintiff asks this Court to remand his case for an immediate award of benefits, or in the alternative, for further proceedings. *Id.*

Defendant maintains the decision denying benefits is supported by substantial evidence, free of legal error, and should be affirmed. *See generally*, Dkt. 21.

The Court turns first to Plaintiff's objections regarding the ALJ's assessment of his testimony.

## A. **Plaintiff's Testimony**

The ALJ partially discredited Plaintiff's testimony, finding several of his statements "about his social abilities" to be inconsistent, and the objective medical evidence lacking in documentation of "significant objective findings and treatment that would have supported limitations greater than those provided in the [RFC assessed by the ALJ]." AR 1242-1243.

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting some of his subjective symptom reports. Dkt. 15 at 12.

Defendant contends the ALJ reasonably found the "full extent" of Plaintiff's testimony was "unreliable". Dkt. 21 at 2.

### 1. Standard

"The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant must produce objective medical evidence of an underlying impairment or

1   impairments that could reasonably be expected to produce some degree of symptom."

2   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks

3   omitted). "If the claimant meets this threshold and there is no affirmative evidence of

4   malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms

5   only by offering specific, clear and convincing reasons for doing so." *Id.*

6          When assessing a claimant's credibility the ALJ may consider "ordinary techniques of

7   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

8   symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

9   1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent

10  with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294,

11  1297 (9th Cir. 1998).

12         However, affirmative evidence of symptom magnification, or malingering, relieves an

13  ALJ from the burden of providing specific, clear, and convincing reasons for discounting a

14  claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r*

15  *of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235

16  (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

17  Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d

18  639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination.

19  *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a

20  credibility determination where that determination is based on contradictory or ambiguous

21  evidence. *Id.* at 579.

22     2.  <u>Analysis</u>

23         First, according to Plaintiff, the ALJ failed to identify any "meaningful inconsistencies"

24  between Plaintiff's statements about his social abilities and his actual activities of daily living.

Dkt. 15 at 12-13. Plaintiff insists the ALJ's finding is inconsistent with settled caselaw holding that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Defendant maintains the ALJ clearly and convincingly found that despite Plaintiff alleging limitations in almost all areas of physical and mental functioning, he had no problems with activities of personal care, he prepared simple meals, he drove a car and used public transportation, he shopped in stores, he read books and played guitar daily, he had custody of his grandchildren and cared for them, and he reported playing basketball. Dkt. 21 at 5 (citing AR 367-370, 647, 1201, 1245).

The Court concurs with Defendant that the ALJ provided clear and convincing reasons, supported by substantial evidence, for finding several of Plaintiff's statements "about his social abilities" were inconsistent with his alleged limitations. Specifically, the ALJ stated:

> He told evaluators that he had problems with crowds and tended to isolate himself (e.g., 19F, 25F), and he noted in function reports that he had trouble getting along with others (5E, 10E). However, he was able to go out alone, use public transportation, and shop in stores (5E, 10E). He was calm, polite, and cooperative and demonstrated a full affect and linear thought (e.g., 4F). He demonstrated some degree of social skills by meeting and marrying a woman he met at work, by staying at a friend's house from time to time, and by going to church once a month. He also demonstrated an ability to concentrate, indicating that he read history books and political military thrillers (5E, 10E, hearing testimony).

AR 1242.

The Court has reviewed the records cited by the ALJ in the above paragraph and finds that they constitute substantial evidence upon which the ALJ could reasonably conclude that Plaintiff engaged in activities that were inconsistent with his statements about his alleged limitations. *See*, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

1    Next, Plaintiff argues the ALJ's "cart before the horse" reasoning that the medical

2    evidence "fails to document significant objective findings and treatment that would have

3    supported limitations greater than those provided in the residual functional capacity above" is

4    legally erroneous. Dkt. 15 at 13 (citing AR 1242; *Brown-Hunter v. Colvin*, 806 F.3d 487, 489

5    (9th Cir. 2015)("an ALJ does not provide specific, clear, and convincing reasons for rejecting a

6    claimant's testimony by simply reciting the medical evidence in support of his or her residual

7    functional capacity determination.").

8    Defendant does not respond to this argument. *See generally*, Dkt. 21.

9    The Court finds that while Plaintiff is correct that statements such as the ALJ made, here,

10   that the evidence did not support "limitations greater than those provided in the residual

11   functional capacity above" are misleading, the inquiry turns on whether the ALJ proceeds with

12   clear and convincing reasons supported by substantial evidence to support his conclusion, or

13   simply lists points that support a pre-determined RFC. *See e.g.*, *Laborin v. Berryhill*, 867 F.3d

14   1151, 1153-54 (9th Cir. 2017)("By discrediting a claimant's statements concerning the intensity,

15   persistence and limiting effects of the claimant's symptoms to the extent they are inconsistent

16   with the RFC, the ALJ puts the cart before the horse.)). Here, the Court finds the ALJ proceeded

17   with a meaningful review of the record and cited clear and convincing reasons supported by

18   substantial evidence for his RFC determination. . AR 1242.

19   Third, Plaintiff argues the ALJ's finding that the objective medical evidence did not

20   support all of Plaintiff's testimony constitutes a misapplication of the objective evidence test

21   because the test dictates that one a Plaintiff shows his medical impairments could reasonably be

22   expected to cause some degree of the symptoms he alleges, the ALJ cannot reject his testimony

23

24

about the extent or severity of his symptoms and limitations based solely upon whether objective evidence supports them. Dkt. 15 at 13.

Defendant responds that the reasons the ALJ identified as undermining Plaintiff's testimony are clear and convincing, and supported by substantial evidence, such as records showing Plaintiff's alleged right shoulder and back pain were substantially improved following surgery (Dkt. 21 at 3 (citing AR 450, 1243)), a 2008 examination of Plaintiff's neck showing no midline tenderness and a normal range of motion (*id*. (citing AR 541, 1243)), and a 2013 examination showing normal range of motion in the neck and a neurovascularly intact arm without obvious shoulder welling or effusion (*id*. (citing AR 1224-1225,1243)). Dkt. 21 at 5-6. Defendant further contends that the ALJ clearly and convincingly set forth substantial evidence contradicting and undermining much of Plaintiff's mental-health-related testimony. Dkt. 21 at 4-5. Specifically, Defendant points out that the ALJ cited examination and treatment notes from the relevant period showing unremarkable mental status examination findings (*id*. (citing AR 1244-1246), such as in 2009, when Plaintiff showed good eye contact, normal speech, and intact immediate memory, recalling four out of four items immediately during one exam (*id*. (citing AR 636)), and during another examination that same year where Plaintiff was cooperative, performed serial three and seven tasks without error, and again showed normal speech (*id*. (citing AR 662)). Further, Defendant notes the ALJ's references to examinations where Plaintiff was noted to be in a "fairly good" mood (*id*. (citing AR 529)), had good eye contact, "good concentration and attention," possessed the ability to register new memories on a single attempt (*id*. (citing AR 704)), was "alert and cooperative, displayed normal mood and affect, and had normal attention span, concentration, and memory (*id*. (citing AR 709)), displayed an unremarkable affect, mood, thought process, orientation, and behavior (*id*. (citing AR 716)), and

self-reported that his mood was "okay" and he was "not having any problems with anxiety" (*id*. (citing AR 724)).

Plaintiff replies that none of Defendant's arguments change the legal reality that once he demonstrated medical impairments that could reasonably be expected to cause some degree of the symptoms alleged, the ALJ could not reject his testimony about their extent or severity without citing clear and convincing reasons for doing so. Dkt. 22 at 6 (citing, *inter alia*, *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). Plaintiff reiterates that the ALJ's selective citation to the medical record fails to fully evaluate all of the medical evidence, as discussed in more detail below, and Plaintiff's activities of daily living do not meet "the threshold for transferable work skills" as none of his activities demonstrate the ability to perform "any type of full-time competitive work on a sustained basis". *Id*. (citing, *inter alia*, *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007)). Finally, Plaintiff replies that Defendant fails to rebut his argument that the ALJ misapplied the objective evidence test and violated the "cart before the horse" principle. *Id*.

The Court notes the legal standard that once a claimant has established a severe impairment "an [ALJ] may not reject [his] subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity" of his symptoms. *Bray v. Comm'r Soc. Sec. Admin*., 554 F.3d 1219, 1227 (9th Cir. 2009)(ALJ may not reject claimant's testimony based solely upon a lack of supporting medical evidence). However, in this case the Court concurs with Defendant that the ALJ did not simply reject Plaintiff's testimony due to lack of corroborating objective medical evidence, but also because, as discussed *supra*, Plaintiff's activities of daily living were inconsistent with the degree of limitation he alleged. *See*, *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012)(ALJ may rely on an unexplained or inadequately

explained failure to seek treatment). Contrary to Plaintiff's contentions, the ALJ did, in fact, find that his activities of daily living "demonstrated a level of functioning consistent with the ability to perform light work" noting his ability to drive, use public transportation, manage his finances, prepare simple meals, shop, take care of his grandchildren, play basketball, and return to work in 2013. *See*, AR 1245. Thus, the Court is not persuaded by Plaintiff's argument that the ALJ partially rejected his testimony based solely on a lack of objective medical evidence to fully corroborate it.

In sum, the Court finds no reversable error in the ALJ's assessment of Plaintiff's testimony.

**B. Medical Evidence**

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of several mental-health related medical opinions in the record. *See generally*, Dkt. 15. Defendant disagrees. *See generally*, Dkt. 21. Notably, Plaintiff does not challenge the ALJ's treatment of the physical-health related medical opinions. *Id.*

1. Standard

This case was filed before March 27, 2017 and is therefore governed by the old regulations for evaluating opinion evidence. 20 C.F.R. § 404.1527(b). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting

1   out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

2   interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

3   1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

4       2.   Analysis

5           *a.   David Reynolds, Ph.D.*

6           At step three of the sequential evaluation the ALJ determines whether a disability

7   claimant's impairments meet or equal "one of a number of listed impairments that the

8   [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*

9   *v. Yuckert*, 482 U.S. 137, 141 (1987); *see also*, 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If

10   the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. §

11   404, subpt. P, app. 1, the claimant will conclusively be found disabled. *Id.*

12           Here, the ALJ called David Reynolds, Ph.D. (Reynolds) to testify at the March 2012

13   hearing and assist the ALJ with his step three finding. AR 45-51. Reynolds, who reviewed

14   records but did not personally examine Plaintiff, testified, *inter alia*, that he believed Plaintiff

15   met the requirements of listed impairment (Listing) 12.04C, on or before October 2008. *Id.*

16           The ALJ ultimately regarded Reynold's opinion unpersuasive, finding it was inconsistent

17   with the overall record as well as Plaintiff's demonstrated functioning, and unsupported by any

18   documented ongoing mental-health treatment during the relevant period, which was a feature of

19   his mental disorder.[1] AR 1248.

20

21

22

23       [1] The ALJ noted that Plaintiff indicated he stopped or did not start treatment because he felt medications
were ineffective, he lost benefits, or he lacked insurance—not because his mental disorder(s) prevented him from
24   seeking treatment. AR 1248 (citing 522, 530, 743).

1    Considering whether the severity of Plaintiff's mental impairments, singly or in

2    combination, met the criteria of listing 12.04 or 12.06, the ALJ considered both the "paragraph

3    B" criteria[2] and the "paragraph C" criteria. AR 1240-1241. In so doing, he concluded that

4    Plaintiff did not meet the "paragraph B" criteria (which Plaintiff does not object to) because he

5    only had a moderate limitation in understanding, remembering, or applying information; a

6    marked limitation in interacting with others; a moderate limitation in concentrating, persisting, or

7    maintaining pace; and a moderate limitation in adapting or managing oneself. *Id*. Similarly, the

8    ALJ found Plaintiff did not meet the "paragraph C" criteria because there is no evidence of

9    ongoing medical treatment, mental-health therapy, psychosocial support, or a highly structured

10   setting that diminished the symptoms and signs of his mental disorder. AR 1241. The ALJ also

11   found no evidence that Plaintiff had minimal capacity to adapt to changes in his environment or

12   to demands that were not already part of his daily life. *Id*.

13        Plaintiff insists Reynolds' testimony established that Plaintiff in fact did meet the "new

14   version of Listing 12.04C" as Reynolds testified that Plaintiff had "a residual disease process

15   that's [sic] resulted in such marginal adjustment that even a minimal increase in mental demand

16   or change in life would be predicted to cause the individual to decompensate." Dkt. 15 at 4-5

17   (citing AR 47). Plaintiff argues this finding squares with the "new version" requirement that an

18   individual have "minimal capacity to adapt to changes [in his/her] environment or to demands

19   that are not already part of [his/her] daily life." *Id*. at 5 (citing Listing 12.04C(2)). Nevertheless,

20   Plaintiff also incongruously argues that the ALJ's application of "the C criteria" was arbitrary

21

22

23        [2] To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two
     marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently,
     appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function

24   independently, appropriately, or effectively, and on a sustained basis. AR 1240.

1   and capricious because "the C criteria" did not go into effect until January 17, 2017, yet Plaintiff

2   is "only seeking benefits for the closed period of October 24, 2008 through October 1, 2013".

3   Dkt. 15 at 4-5.

4       In addition, Plaintiff argues that none of the ALJ's reasons for rejecting Reynolds are

5   specific and legitimate. Dkt. 15 at 3-4.[3]

6       Defendant responds that the ALJ's finding that the record "includes no documentation of

7   ongoing mental-health treatment", which is required to establish the "serious" element of Listing

8   12.04C is a specific and legitimate reason to discount Reynolds. Dkt. 21 at 7-8 (citing AR 555,

9   566, 1248 and 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, 12.04C). Defendant also argues Reynolds

10  does not point to any evidence in the record that could satisfy such criteria. Dkt. 21 at 8 (citing

11  AR 45-49). Notably, Defendant does not comment on whether the ALJ properly applied "the C

12  criteria" to Plaintiff's claim in the first place. *See generally*, Dkt. 21.

13      Plaintiff replies that the record *does*, in fact, reflect "documentation of ongoing mental

14  health treatment between January 2010 and December 2011", thereby rendering the ALJ's

15  finding unsupported by substantial evidence. Dkt. 22 at 2-3 (citing AR 668-79, 695-706, 716-

16  56). Moreover, Plaintiff redoubles his argument that the ALJ's statement that Plaintiff "indicated

17  that he stopped or did not start treatment because medications were ineffective, he lost

18

19  _____

20      [3] According to Plaintiff, stating that Reynold's "opinion is inconsistent with the overall record and the claimant's demonstrated functioning" lacks specificity. *Id*. at 4 (citing AR 1248). The ALJ's finding that Plaintiff's social functioning was more limited than Reynolds, himself, opined was, Plaintiff argues, "not a valid reason" to reject Reynolds. *Id*. The ALJ's citation to "other records" is actually just "an April 2009 check-box form completed by a state agency non-examining psychologist" who did not have the benefit of evaluating the "totality of the evidence" like Reynolds did. *Id*. (citing AR 566). And finally, Plaintiff contends that the ALJ's conclusion that "the record includes no documentation of ongoing mental-health treatment and no evidence that inconsistent treatment or lack of compliance is a feature of his mental disorder" is not supported by substantial evidence. *Id*. To the contrary, Plaintiff asserts that the "the record includes documentation of ongoing mental health treatment between January 2010 and December 2011" and the fact that Plaintiff "stopped or did not start treatment because medications were ineffective, he lost benefits, or he lacked insurance" are not convincing reasons to discredit Reynolds. *Id*. (citing AR 522, 530, 668-79, 695-706, 716-56, 1205).

benefits, or he lacked insurance" is not a valid reason to discredit a medical opinion. *Id*. at 3 (citing 522, 530, 1205, 1248). Finally, Plaintiff replies that Defendant fails to rebut Plaintiff's argument that applying the post-January 2017 "C criteria" to Plaintiff's "closed" application for benefits between October 24, 2008 through October 1, 2013 was arbitrary and capricious. *Id*.

The Court begins its analysis by finding that Plaintiff has failed to cite any authority to support the conclusion that the ALJ misapplied, or failed to apply, the correct "C criteria" to his case.

Second, as the Court previously determined, *supra*, the ALJ properly partially rejected Plaintiff's testimony due to inconsistency with his "demonstrated functioning". Yet, the ALJ actually found Reynolds's opinion overstated Plaintiff's "social functioning"—a finding Plaintiff objects to. However, the Court finds this inconsistency between the level of functioning the ALJ found to be credible and the level of functioning Reynolds assumed to be accurate was a specific and legitimate reason to partially discredit Reynolds's opinion.

Third, the Court is not persuaded by Plaintiff's argument that the ALJ relied solely on an April 2009 "check-the-box" consultative medical assessment to find Reynolds's opinion was "inconsistent with the overall record". While it is true the ALJ rather confusingly ended that sentence with a pinpoint citation to a "check-the box" form (*see*, AR 566), the ultimate test is whether the ALJ set forth his reasoning in a way that permits the Court to conduct a meaningful review of his finding. *See e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review"). Here, the Court finds that the ALJ's thorough review of the 1510-page record, including his evidentiary findings discussed *supra* and *infra*, support his conclusion that

1  Reynold's opinion is inconsistent with the "overall record". *See, e.g.*, AR 522, 529, 530, 636,

2  662, 704, 709, 716, 724, 743.

3      Fourth, Plaintiff is incorrect that the ALJ could not consider why he failed to seek

4  ongoing mental-health treatment during the relevant period. Minimal or conservative treatment is

5  "powerful evidence" regarding the extent of a claimant's symptoms, including pain. *Burch v.*

6  *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Failure to seek aggressive or alternative treatment

7  permits the inference that a claimant's symptoms were not as severe as he reported. *Tommasetti*

8  *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, the ALJ must take into account the

9  condition being treated and also consider possible reasons the claimant did not engage in more

10 treatment. *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017); SSR 16-3p.[4]  Here, the ALJ

11 satisfied this requirement by finding the lack of ongoing mental-health treatment was not "a

12 feature of [Plaintiff's] mental disorder" because Plaintiff stated the reason he did not consistently

13 engage in mental-health treatment was because he felt medication was ineffective, he lost

14 benefits, or he lacked insurance. AR 1248.

15      Fifth, even if Plaintiff were correct that the record documents mental health treatment

16 between January 2010 and December 2011, the ALJ's conclusion that Plaintiff's mental-health

17 treatment record was inconsistent during the relevant period (October 24, 2008 through October

18 1, 2013) remains a specific and legitimate reason to discredit Reynolds's opinion. AR 1236.

19

20

21 _____

22      [4] SSR 16-3p explains, *inter alia*, "if the frequency or extent of the treatment sought by an individual is not
comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed

23 treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's
symptoms are inconsistent with the overall evidence of record." *Id*. at 9. "We will not find an individual's symptoms
inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not

24 comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*. (emphasis added).

1   Nevertheless, it bears stating that the ALJ expressly addressed the time period Plaintiff argues he

2   was actively engaged in mental health treatment, and found the following:

3       From **mid-2010 to mid-2011**, the claimant **rarely took medication** and
        **participated in little therapy**. When he went to therapy, however, his mental-
4       status examinations were **largely normal**, and he did not present with
        overwhelming mental-health issues (25F). In July 2011, he presented for another
5       mental health evaluation and attended individual and group therapy **but
        participated only minimally in group sessions** (25F). He was **discharged from
6       services in December 2011 because the clinic had had no contact** with him since
        October 2011 (25F/41). From October 2011 until October 2013, the record shows
7       no mental-health treatment. His primary-care provider, however, noted **in 2012
        that even without treatment, the claimant's mental-health symptoms were
8       stable** (24F/4).

9   AR 1245 (emphasis added).

10      In sum, the Court finds the ALJ's rejection of Reynold's opinion and the ALJ's step three

11  evaluation are both supported by substantial evidence.

12      *b.   Terilee Wingate, Ph.D.; Jack T. Norris, Ph.D.; Keith J. Krueger, Ph.D.*

13      On October 24, 2008, Terilee Wingate, Ph.D. (Wingate), diagnosed Plaintiff with a mood

14  disorder, NOS (major depressive disorder vs. bipolar by history); anxiety disorder, NOS

15  (generalized anxiety disorder and panic); and alcohol/cannabis dependence, in full

16  remission. AR 633, 637. Wingate opined that Plaintiff was markedly limited in the ability to

17  interact appropriately in public and respond appropriately to and tolerate the pressures and

18  expectations of a normal work setting; was moderately limited in his ability to learn new tasks,

19  exercise judgment and make decisions, perform routine tasks, relate appropriately to co-workers

20  and supervisors, care for himself (including personal hygiene and appearance) and control

21  physical or motor movements and maintain appropriate behavior. AR 632, 634. In addition,

22  Wingate observed that Plaintiff's mood/affect was depressed/blunted. AR 659.

23      On November 20, 2007 and April 22, 2008, Jack T. Norris, Ph.D. (Norris) opined that

24  Plaintiff had many moderate limitations in work-related abilities, as well as a marked limitation

1  in the ability to interact with the public and respond appropriately to and tolerate the pressures

2  and expectations of a normal work setting. AR 1182, 1192.

3        On September 21, 2010, Keith J. Krueger, Ph.D. (Krueger), diagnosed Plaintiff with

4  major depression, recurrent; anxiety disorder, NOS (strong features of social phobia

5  and PTSD); and alcohol and cannabis dependence, substantially in remission. AR 682. Krueger

6  observed that Plaintiff was almost always sad, with a marked effect on his work performance,

7  and that he suffered from fear of crowds and very little self-confidence, each with a moderate to

8  marked effect. AR 681. Krueger found that Plaintiff's affect was depressed/manic, and opined

9  that he was markedly limited in his ability to interact appropriately in public and respond

10  appropriately to and tolerate the pressures and expectations of a normal work setting, and

11  moderately limited in his ability to learn new tasks, relate appropriately to co-workers and

12  supervisors, care for himself, including personal hygiene and appearance, and maintain

13  appropriate behavior in a work setting. AR 683, 686.

14        Summarily addressing all three of the above opinions, the ALJ found that Wingate,

15  Norris, and Krueger's opinions were only entitled to "some weight", stating:

16      These opinions are given some weight because although all three consultants

17      supported their opinions with findings from their evaluations, the opinions **are not
    wholly consistent** with the overall record and the claimant's demonstrated

18      functioning. In particular, the **claimant appears able to handle stress better than
    the consultants opined.** Insofar as their opinions indicate that the claimant is

19      limited to unskilled work, they are consistent with the objective evidence. However,
    their limitations related to social functioning, responding appropriately, and

20      tolerating normal work pressures and expectations appear to **rely heavily on the
    claimant's self-reported symptoms**, including his alleged fear of crowds and not

21      seeing himself as employable (e.g. 19F/4, 28F/3).

22  AR 1246 (emphasis added).

23        Plaintiff argues these were not specific and legitimate reasons to reject any of Wingate,

24  Norris, or Krueger's opinions. Dkt. 15 at 7. According to Plaintiff, the ALJ's assertion that

1   Plaintiff "appears able to handle stress better than the consultants opined" is not supported by

2   substantial evidence, nor is the conclusion that they relied heavily on Plaintiff's self-reports,

3   because they also relied on clinical observations. *Id*. Plaintiff also contends inconsistent mental

4   health treatment is not a legitimate reason to reject a psychologist's opinion, Plaintiff's ability to

5   engage in limited social interaction "proves nothing", and the fact Plaintiff became employed in

6   October 2013 is irrelevant because he is not seeking benefits beyond that date. *Id*.

7         Defendant responds that the conflict between Wingate, Norris, and Krueger's opinions

8   and Plaintiff's activity level was a specific and legitimate reason to partially reject them. Dkt. 21

9   at 9[5] (*citing*, *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)("A conflict between a [doctor's]

10   opinion and a claimant's activity level is a specific and legitimate reason for rejecting the

11   opinion.")). In addition, Defendants argues the ALJ gave several additional specific and

12   legitimate reasons supported by substantial evidence to reject these consulting opinions. *Id*.

13   (citing AR 709, 716, 720, 1214, 1245-1246).

14         Plaintiff replies that Defendant did not effectively rebut his argument that the consultants'

15   relied upon clinical observations to formulate their opinions, that inconsistent use of prescription

16   medication and failure to consistently participate in counseling are not legitimate reasons to

17   reject medical opinions, that having friends, a roommate, and a spouse is not inconsistent with

18   tending to isolate, and the fact he became employed in October 2013 is irrelevant because he is

19   not seeking benefits beyond October 1, 2013. *Id*. Dkt. 22 at 4.

20         The Court finds, first, that the ALJ's conclusion that Plaintiff "appears able to handle

21   stress better than the consultants opined" was a specific and legitimate reason supported by

22

23       [5] Defendant notes here that the ALJ accounted for some of the limitations Wingate (and others) opined by
including in his RFC a limitation to short, simple instructions and routine, predictable tasks; and only occasional

24   interactions with coworkers and supervisors, with no interactions with the public. *See*, AR 1241.

1  substantial evidence as the ALJ clearly pointed to the fact Plaintiff inconsistently used

2  psychotropic medication and failed to consistently participate in counseling, yet mental status

3  examinations remained largely normal. AR 1246.

4      Next, having reviewed these consultants' records, the Court finds the ALJ reasonably

5  concluded that they relied heavily upon Plaintiff's discredited self-reports to formulate their

6  opinions. AR 632-641 1180-1185, 1190-1199. This is a specific and legitimate reason supported

7  by substantial evidence to reject them, as the ALJ pointed to several examples of Plaintiff self-

8  reports aligning with these consultants opined functional limitations, notwithstanding the

9  inconsistencies the ALJ identified between Plaintiff's self-reports and the rest of the record. *Id*.

10  (citing AR 366-373, 398-404, 529, 584, 636-637, 647, 653-656, 682, 685-689, 698-699, 710,

11  716-722, 1182).

12      Third, for the reasons already discussed in this opinion, the Court finds Plaintiff's

13  inconsistent mental health treatment was a specific and legitimate reason supported by

14  substantial evidence to partially discredit these consulting medical source opinions.

15      Finally, the Court concurs with Plaintiff that the fact he became employed in October

16  2013 is irrelevant because the ALJ granted Plaintiff's request for a "closed period of disability …

17  making the relevant period for this decision October 24, 2008, through October 1, 2013." AR

18  1236. However, because the ALJ provided other legally sound reasons to partially discredit these

19  consulting opinions, the Court concludes that this error was, at most, harmless. *See e.g.*,

20  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an

21  erroneous reason among other reasons to discount a claimant's credibility is at most harmless

22  error where an ALJ provides other reasons that are supported by substantial evidence); *see also*,

23

24

1   *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)(an error is harmless if

2   it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability

3   determination.").

4        In sum, the Court finds the ALJ's partial rejection of Wingate, Norris, and Krueger's

5   opinions is supported by substantial evidence and free of harmful error.

6        *c.   John C. Lowry, D.O.*

7        On May 17, 2008 John C. Lowry, D.O. (Lowry) diagnosed Plaintiff with major

8   depressive disorder, moderate to severe without psychotic features versus bipolar disorder (type

9   1 vs. 2), most recent episode depressed; anxiety disorder, not otherwise specified; history of

10  generalized anxiety disorder diagnosis; possible prolonged bereavement; and history of

11  marijuana and cocaine abuse versus dependence in full, sustained remission. AR 468-471. Lowry

12  opined that Plaintiff could perform simple, repetitive tasks, accept instructions from supervisors,

13  and interact with co-workers and the public. AR 471. However, Lowery stated that he was

14  "unclear" whether Plaintiff could perform work activities on a consistent basis, maintain regular

15  attendance in the workplace, complete a normal workday and workweek, or deal with usual

16  workplace stress. AR 471. Still, Lowry surmised that if Plaintiff's "symptoms could be addressed

17  and reduced, it is likely [he] could return to the work force on a part-time or full-time basis (if his

18  physical condition allowed for this return)." *Id.*

19        The ALJ gave this opinion "some weight" stating that that Lowry's opinion Plaintiff

20  "was able to perform simple work and handle social demands with co-workers and the public is

21  consistent with the longitudinal record, even though [Plaintiff's] mental-health treatment was

22  inconsistent at best." AR 1247.

23        Plaintiff insists, without expounding, that the ALJ did not give any reasons for partially

24  rejecting Lowry's opinion that it was "unclear" if Plaintiff could maintain regular attendance in

1    the workplace, complete a normal workday or work week without interruptions from his

2    psychiatric condition, or deal with the usual stress encountered in competitive work". Dkt. 15 at

3    8; Dkt. 22 at 4-5.

4         Defendant maintains that Lowry's "unclear" statement excused the ALJ from giving it

5    any weight, although the ALJ nevertheless adopted some of Lowry's opined limitations. Dkt. 21

6    at 11.

7         The Court is not persuaded by Plaintiff's argument that the ALJ "rejected" Lowry's

8    "unclear" statement, as it was not an opined functional limitation. And while the ALJ is required

9    to resolve ambiguity in the record, the ALJ did not find Lowry's "unclear" statement resulted in

10   any ambiguity. *See e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

11   ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for

12   proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.").

13   To the contrary, as Defendant contends, the ALJ gave Lowry's opinion "some weight" and

14   accounted for most of his opined limitations in Plaintiff's RFC, including limitations to short,

15   simple instructions and routine, predictable tasks, and only occasional interactions with

16   coworkers and supervisors, with no interactions with the public. AR 1241, 1247.

17        In sum, the Court finds the ALJ's assessment of Lowry's opinion is supported by

18   substantial evidence.

19        *d.  Tasmyn Bowes, Psy.D.*

20        On November 2, 2011, Department of Social and Health Services psychological

21   consultant Tasmyn Bowes, Psy.D. (Bowes), opined that Plaintiff could perform and persist in

22   tasks involving simple instructions, was mildly limited in performing routine tasks without

23   undue supervision, and was mildly limited in taking appropriate precautions in the workplace.

24   AR 1207-1208. In addition, Bowes opined that Plaintiff was moderately limited in other areas of

1  mental functioning, including learning new tasks, working with limited public contact, and

2  maintaining appropriate behavior in the workplace. AR 1208.

3      The ALJ found Bowes's opinion was "somewhat consistent with and supported by the

4  overall record and [Plaintiff's] demonstrated functioning" and gave it "some weight." AR 1247.

5  The ALJ explained that while Plaintiff reported that he tended to isolate himself, he

6  demonstrated the ability to interact with others insofar as he was married twice during the

7  relevant period, and he attended church, shopped, and used public transportation. *Id.*

8      Plaintiff insists the ALJ failed to provide any reasons—much less specific and legitimate

9  reasons—for not fully crediting Bowes's opinion, thereby resulting in harmful error. Dkt. 15 at 9.

10  However Defendant argues the ALJ's RFC finding sufficiently accounted for Bowes' opinion by

11  including a restriction to no interactions with the public, and limiting Plaintiff to routine,

12  predictable tasks outside a fast-paced, production-type environment, and to a workplace with

13  only occasional, routine changes and only occasional interactions with coworkers and

14  supervisors. AR 1241.

15      The Court finds the ALJ plainly pointed to Plaintiff's "demonstrated functioning" as a

16  specific and legitimate reason to partially discredit Bowes's opinion, and as the Court has

17  already held, *supra*, this finding is supported by substantial evidence.

18      *e.  Lorraine Barton-Haas, M.D.*

19      On April 12, 2010, Lorraine Barton-Haas, M.D. (Barton-Haas), diagnosed Plaintiff with

20  major depressive disorder, recurrent, severe, without psychotic features; rule out bipolar

21  disorder; generalized anxiety disorder; history of PTSD (2005), currently in partial remission;

22  polysubstance dependence, in full-sustained remission according to patient history; borderline

23  personality traits; and history of suicidal ideation and attempts, unstable relationships, unstable

24

sense of self, and sensitivity to rejection. AR 705.[6] Barton-Haas opined that Plaintiff's prognosis was "[g]uarded, due to some of the difficulties and setbacks he has had," noting that "[h]e also has apparent difficulty in responding in treatment and being consistently benefitting from treatment." *Id*. The ALJ did not comment on this opinion.

Plaintiff alleges the ALJ's failure to evaluate Barton-Haas's opinion, resulted in harmful error. Dkt. 15 at 9.

Defendant responds that the ALJ was not required to address Barton-Haas's diagnosis because it does not constitute a medical opinion regarding Plaintiff's functional capacity as she did not opine regarding Plaintiff's functional limitations, and in any event Plaintiff fails to identify any conflict between Barton-Haas's statements and the RFC, which included "numerous limitations to account for Plaintiff's mental difficulties." Dkt. 21 at 13.

Plaintiff replies that Barton-Haas's "findings lend further support for the opinions of Dr. Reynolds, Dr. Wingate, Dr. Norris, Dr. Krueger, Dr. Lowry, and Dr. Bowes" so the ALJ's failure to discuss it violates his duty to assess Plaintiff's RFC based upon "all of the evidence". Dkt. 22 at 5 (citing *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) and 20 C.F.R. §§ 404.1545, 20 C.F.R. § 416.945 ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.")).

The Court concurs with Plaintiff that because a medical diagnosis is relevant medical evidence the ALJ erred by failing to acknowledge Barton-Haas's diagnosis. However, the Court finds this error was harmless as Barton-Haas's diagnosis was substantially similar to others the

---

[6] Similarly, on September 16, 2011, Barton-Haas diagnosed Plaintiff with dyssomnia NOS, rule out breathing-related sleep disorder; major depressive disorder, recurrent, severe, without psychotic features, in remission; generalized anxiety disorder; previous history of possible PTSD in 2005; polysubstance dependence, in full, sustained remission according to patient; and borderline personality traits. AR 748.

ALJ did thoroughly review that were accompanied by functional limitations assessments the ALJ incorporated into Plaintiff's RFC. *See*, *Jones v. Colvin*, 2015 WL 71709, at *5 (W.D. Wash. Jan. 6, 2015) (citing *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)); *see also*, *Stout*, 454 F.3d at 1055. Accordingly, discussing Barton-Haas's diagnosis would not have changed the ALJ's ultimate determination that Plaintiff was not disabled during the relevant period.

### V. CONCLUSION

For the foregoing reasons the Court hereby AFFIRMS Defendant's decision denying benefits.

Dated this 19th day of May, 2023.

David W. Christel
United States Magistrate Judge